ANTHONY PERSICK, Respondent, *v.* PHILADELPHIA AND READ-
ING COAL AND IRON COMPANY, Appellant.

Second Department, February 21, 1918.

Master and servant — negligence — action against mining company
under Employers' Liability Act of Pennsylvania — evidence insuffi-
cient to establish that bumper of car was defective — evidence as
to defect some weeks prior to accident — jurisdiction — allega-
tion by defendant as to residence of plaintiff — burden of proof —
pleading by plaintiff in conformity with subdivision 4 of section
1780 of Code of Civil Procedure.

In an action against a Pennsylvania mining company under the Employers'
Liability Act of said State for personal injuries to the plaintiff alleged to
have been caused by his fall from a car due to a defective bumper thereon,
*held,* that a verdict involving a finding that the bumper was defective
on the day of the accident was against the weight of the evidence.

Proof that the car was defective two or three weeks before the accident
is immaterial if it was not defective upon said day.

Where defendant pleaded against the jurisdiction, thereby raising the issue
as to the plaintiff's residence, if there was a question of fact presented,
it should have been submitted to the jury.

Upon such issue the burden of proof would have been upon the defendant.

In an action against a foreign corporation, the jurisdiction of the court
does not depend exclusively upon the residence of the plaintiff, where
he has pleaded in conformity to the last subdivision of section 1780 of
the Code of Civil Procedure that the defendant is doing business within
this State, and no question of fact was presented at the trial with reference
to said provision.

APPEAL by the defendant, Philadelphia and Reading Coal
and Iron Company, from a judgment of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of the
county of Westchester on the 7th day of December, 1916,
upon the verdict of a jury for $20,000 and also from orders
entered in said clerk's office on the 7th and 18th days of
December, 1916, respectively, denying defendant's motions
to set aside the verdict and for a new trial.

*Pierre M. Brown,* for the appellant.

*Vine H. Smith* [*Stephen C. Machcinski* with him on the
brief], for the respondent.

JENKS, P. J.:

This action is brought in the Supreme Court by servant against master upon the Employers' Liability Act of Pennsylvania, for negligence (Penn. Laws of 1907, p. 523, No. 329, § 1; 5 Purdon's Digest [13th ed.], 5464, § 1), that provides, *inter alia,* it shall not be a defense where " the injury was caused or contributed to by any * * * defect in the works, plant, or machinery, of which the employer could have had knowledge by the exercise of ordinary care."

The servant, driving a loaded car drawn by a mule along a track in a coal mine, stood upon a bumper of the car. The bumper was made of wood, bound by metal. The servant testified that as he approached other cars he stooped to unhook the trace fastenings from the half ring on the car, so that the mule could step out, and the car could go on to the other cars, when the servant's foot slipped and he fell between the car and the other cars. The servant ascribed his fall to the condition of that bumper, in that the wooden part was broken so that his toes slipped and were caught in the metal band. The defendant contended that the bumper was in proper condition and that the plaintiff lost his equilibrium. The servant recovered a verdict of $20,000, and the defendant appeals.

Upon defendant's request, and without objection, the learned court charged " that before plaintiff can recover, the jury must find that the car upon which plaintiff was riding at the time he was injured was the same car he claimed to have seen the defective bumper on from three to four weeks before the accident." Thereupon the defendant also asked for this instruction: " And if they fail to find the two cars were one and the same, their verdict must be for the defendant." The Court: " Yes, I think that is true, because there is no other evidence that this car was otherwise out of order that day." The plaintiff made no objection. Under these instructions, accepted by the parties, the negligence of the master for a defective car depended upon proof, both that the bumper was defective on the day of the casualty, and was thus defective three or four weeks before that day.

I think that the verdict which involved the finding that the bumper was defective on the day of the casualty was against

the weight of the evidence. The testimony of defects was given by the plaintiff alone. He was not supported, even by any physical circumstances, for, as he describes the casualty, it was not naturally attributable to a defective bumper, but entirely consistent with his loss of equilibrium when he stooped over to unfasten the traces. And his testimony was not materially supported by his testimony that the bumper of this car was thus defective three weeks before, for the reason that such testimony is almost negligible.

I shall consider first the testimony as to the defects on the day of the casualty. The plaintiff testifies that " a big chunk of the wood broke out of the iron steel * * * two inches to two and one-half inches "— the upper part of the wooden bumper was split. On cross-examination he testifies that he first saw that this bumper was bad when he shifted his stand, and that he was then upon the moving car about 500 feet away from the place where he fell. The only light available was that upon his hat, and the place was dark. He looked at the bumper for " two or three or four minutes," afterward changed to " a second." He did not think about a bad bumper when he stepped on it. He knew he was standing on a bad bumper. He thought it was safe. For the defendant, Raker, the assistant mine foreman appointed by the State but paid by the company, learned at 8 P. M. of the casualty that had occurred about 6 P. M., and on the next morning, Sunday, he went to the scene. He examined the car and the bumpers. They were in good condition. The car was of the new bumper type. Heim, a former but not a present employee of the defendant, who was at work closely related to that of the plaintiff at the time, saw all of the cars then in use at the gangway, and had to ride upon every one of the bumpers. He saw none in the condition described by the plaintiff — every bumper was flat. Francis, a former but not a present employee of the defendant, who was the engineer at work at the time, saw no car that day which was in such condition. Although he had not to stand on the bumpers, he had to go around every car. Sneider, a lieutenant of the State Police, had investigated the casualty for the defendant, had talked with the plaintiff in the hospital and had taken notes of the conversation, which were received

Second Department, February, 1918. [Vol. 182.

in evidence. He testifies that the plaintiff in describing the casualty said " he was coming out with a car, and in putting the car on the turnout the mule did not give him any slack, that he couldn't unhitch the spreader and he was caught between the cars." He also testifies that the plaintiff made no mention of a defective bumper. Jender, a contract miner, who was the boss of the plaintiff, had returned to Italy sometime after the casualty. But upon consent his written statement was read in evidence. Jender said: " Yes, Toney told me how he got hurt. Toney told me he could not unhook the spreader; the mule was pulling too hard, and he could not unhook, and he stayed between the cars and got caught. Yes, that is what Toney told me." This statement is silent as to any mention of a defective bumper.

I shall now consider the proof that this car was defective two or three weeks before the casualty. Even if such proof were positive and convincing, the plaintiff must have failed upon his proposition of a defective car unless he made satisfactory proof of such condition on the day of the casualty; and, therefore, my consideration of this proof of prior defective condition relates only to its bearing upon the proof that the car was thus defective when the plaintiff fell from it. Here again the plaintiff is unsupported by any other testimony. He testifies that, three or four weeks before, he saw that the bumper of this car was thus broken; he reiterates this testimony several times. He testifies that the car then seen was this very car. But his testimony further shows that he did not know its number; that there were very many cars in use; that they were all painted black, and that they all had bumpers. On cross-examination, when asked if he remembered that car was standing at the face of the gangway when he went to work, he said: " I saw the car standing there, but I don't know if it was that one really, if it was that car. * * * I don't know if it was the very same particular car or it was another car. I saw a car there. Q. Oh, you don't know whether it was the same car as the car that hurt you then? A. No, I don't remember any day." Then when asked whether he was correct in his statement that he did not identify the car, he answered: " I think it must be the same car. I saw a car there and I think it must have been the

same car I got hurt on.   Q. Do you know it was the same car? A. I think it was the same car." He explains that thought by the statement that it was the only car in that condition, and that at the time he stepped on the bumper it came to his mind that this was the same car. Later, he testifies that on this prior occasion — three or four weeks before — he only passed around the car; he only observed it a minute or half a minute and did not pay much attention to it. To say the most, such testimony, under the admitted surrounding circumstances, is very unsatisfactory. It was difficult to meet it by specific contradiction unless proof were offered to show that every car of the " very great number " in use " three weeks, a month, something like that " before, was perfect so far as the bumpers were concerned. However, Heim testifies that if there had been a broken bumper he would have been bound to see it and that he had never seen one during the time he had worked in the mine. And Raker, who inspected the cars every morning, testifies that it would have been impossible for a car in the condition described by the plaintiff to have run three weeks without having been marked " shop," to indicate it must be taken off for repairs.

The defendant requested the learned court to submit to the jury two questions that involved the residence of the plaintiff in this State. The court refused, under exception. The defendant pleaded against the jurisdiction, in that, *inter alia*, neither at the time the cause of action arose nor at the time of the commencement of the action, was the plaintiff a *bona fide* resident, citizen or inhabitant of the State of New York. The defendant thus raised the issue, and if, as litigated, there was presented a question of fact, it should have been submitted to the jury. (*Ubart* v. *Baltimore & Ohio Railroad Co.*, 117 App. Div. 831; *Crowley* v. *Royal Exchange Shipping Co.*, 10 Daly, 409; affd., 89 N. Y. 607; *Johnson* v. *Adams Tobacco Co.*, 14 Hun, 89; *Philadelphia & Reading Ry. Co.* v. *Sherman,* 230 Fed. Rep. 814.) Upon such issue the burden of proof would have been upon the defendant. (*Ubart* v. *Baltimore & Ohio Railroad Co.*, 117 App. Div. 831.) But in view of the reversal, it is not necessary to inquire whether the proof in this record presented a question for the jury. Moreover, the jurisdiction of the

court did not depend exclusively upon the residence of the plaintiff, inasmuch as the plaintiff pleaded in conformity to the final subdivision of section 1780 of the Code of Civil Procedure, and no question of fact was presented at trial with reference to that provision, although the defendant did move as to its unconstitutionality. When defendant stated that the entertaining of jurisdiction was discretionary with the court (See *Waisikoski* v. *Philadelphia & Reading C. & I. Co.*, 173 App. Div. 538), the court said that if it was a matter of discretion it would exercise it in favor of the plaintiff.

The judgment and orders are reversed and a new trial is granted, costs to abide the event.

THOMAS, MILLS, RICH and PUTNAM, JJ., concurred.

Judgment and orders reversed, and new trial granted, costs to abide the event.